IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 21, 2025

## TAKYRIS SEANDALE SIMMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2018-C-1844    Cynthia Chappell, Judge**

_____

### No. M2024-01667-CCA-R3-PC

_____

The Petitioner, Takyris Seandale Simms, appeals from the Davidson County Criminal Court's denial of post-conviction relief from the Petitioner's guilty-pleaded conviction for second degree murder and his twenty-year sentence. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel claim. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and STEVEN W. SWORD, JJ., joined.

Bernard McEvoy, Nashville, Tennessee, for the appellant, Takyris Seandale Simms.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn Funk, District Attorney General; and Vance Wyatt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's conviction relates to the August 22, 2014 shooting death of Jorge Garnica at an apartment complex. At the April 21, 2021 guilty plea hearing, the State's recitation of the facts reflected that the Petitioner and two codefendants went to the apartment complex "specifically looking to rob a Hispanic individual." The Petitioner and the codefendants approached the victim and demanded the victim's money. The Petitioner fired a handgun at the victim, who sustained a fatal gunshot wound to the head. Approximately three weeks later, the police received an anonymous tip that implicated the Petitioner and codefendant Shaquay Dodd in the killing. The Petitioner and codefendant Dodd had been recently arrested for two "armed robberies and carjackings," and their cell phones had been collected as evidence. Although the Petitioner's phone was "blank,"

phone records showed that the Petitioner's phone was near the crime scene around the time of the victim's killing. Codefendant Dodd's phone contained information implicating him in the killing, and codefendant Dodd later admitted his involvement in the victim's killing and implicated the Petitioner and the second codefendant.[1]

Based upon these facts, the Petitioner and the codefendants were indicted for first degree felony murder, first degree premediated murder, and especially aggravated robbery. The Petitioner pleaded guilty to second degree murder as a lesser included offense of first degree felony murder in exchange for a twenty-year sentence and a dismissal of the remaining charges. The plea agreement also resulted in the dismissal of three additional indictments. The judgments were entered on April 21, 2021.

On March 7, 2022, the Petitioner filed a timely pro se petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel. On March 27, 2024, post-conviction counsel filed an amended petition for relief, alleging that counsel's advice for the Petitioner to plead guilty was based upon inadequate trial preparation. The Petitioner alleged that counsel did not evaluate the credibility of the prosecution's witnesses and that the Petitioner would have proceeded to a trial if counsel had conducted an adequate investigation. The Petitioner, likewise, argued that counsel failed to prepare for a trial because counsel told the trial court that severance of the Petitioner's and the second codefendant's trials would severely impact counsel's preparation due to the attorneys having anticipated a joint defense, including sharing a cell phone expert and dividing the questioning of the witnesses. The Petitioner alleged that the effect of counsel's cumulative deficiencies warranted relief.

At the July 10, 2024 post-conviction hearing, trial counsel testified that the Petitioner and the codefendants were charged with first degree felony murder, first degree premeditated murder, and especially aggravated robbery. Counsel said codefendant Dodd confessed to his involvement in the victim's death and agreed to testify against the Petitioner and the second codefendant. Counsel said that the Petitioner, however, agreed to plead guilty to second degree murder shortly before the trial was scheduled to begin.

Trial counsel testified that he received the discovery materials, which showed there were no witnesses to the shooting. He said the materials showed that people at the apartment complex saw three young black men running from the scene and that there were numerous 9-1-1 calls regarding the shooting. Counsel recalled "some motions" and an order in connection with the 9-1-1 calls. Counsel recalled that initially, the police were unable to identify any suspects but that the police received an anonymous tip from a woman

---

[1] The record reflects that the second codefendant proceeded to a trial, at which he was acquitted of the charges.

who stated that the suspects in the victim's killing had been arrested in connection with two carjackings "very near in time" to the victim's killing. Counsel said that the police identified the Petitioner and codefendant Dodd as having been charged with two carjackings and aggravated robbery.

Trial counsel testified that the police questioned the Petitioner, then a juvenile, about the victim's death at the juvenile detention facility. Counsel said that the Petitioner did not admit any wrongdoing, that the police seized his cell phone, and that an analysis of the phone's contents did not show evidence connecting the Petitioner to the victim's death. Counsel said that the Petitioner was charged two years after the offenses and that the case was transferred from juvenile court to criminal court.

Trial counsel testified that no video recordings from the apartment complex in connection with the robbery and killing existed and that none of the witnesses who reported the shooting identified the Petitioner as a perpetrator. Counsel recalled, though, that Kya Whall[2] identified the Petitioner in a photograph array and said the Petitioner confessed to the offenses. Counsel said that the police obtained the Petitioner's DNA but that the police did not find any DNA evidence. Counsel said that a bullet was recovered from the victim's skull during the autopsy but that the bullet did not match any firearm possessed by the Petitioner. Counsel agreed that the murder weapon was never recovered.

Trial counsel testified that the basis for the especially aggravated robbery charge was the taking of the victim's cell phone but that the phone was not found during a search of the Petitioner's home. Counsel said that although the police attempted to interview the Petitioner, he denied any involvement in the offenses. Counsel said that the evidence against the Petitioner stemmed from text messages exchanged between Ms. Whall and codefendant Dodd, the latter of whom discussed the victim's killing and implicated the Petitioner and the second codefendant. Counsel recalled that after the police reviewed codefendant Dodd's cell phone, he confessed to the offenses during an interview. Counsel said that cell phone tower pings showed the Petitioner's phone in the area around the time of the offenses, although the codefendants' phones did not show tower pings. Counsel said, "Wi-fi and . . . other pings" showed that the Petitioner was with the codefendants after the offenses. Counsel said the data from codefendant Dodd's phone showed that he and the Petitioner were friends before and after the offenses. Counsel concluded that the State did not have a strong case against the Petitioner.

---

[2] The record contains inconsistent spellings of her name. We use the spelling reflected on the cover page of the indictment.

Trial counsel testified that codefendant Dodd stated during his police interview that he did not know a robbery was planned and that the Petitioner robbed and shot the victim. Counsel said Ms. Whall told the police that she overheard the Petitioner admit his involvement in the killing.

Trial counsel testified that the Petitioner's cell phone data showed that his phone initiated and received telephone calls and text messages between 7:30 and 7:50 p.m. and that 9-1-1 calls regarding the shooting occurred at 8:06 p.m. Counsel said that the data placed the Petitioner's phone before the shooting in the general area of the shooting in South Nashville but did not provide a specific location.

Trial counsel testified that the Petitioner was age twenty-three at the time of his guilty plea and that this case was the Petitioner's first criminal court matter. Counsel said that he and the Petitioner discussed the jury trial process, accomplice testimony and the need for corroboration, and the prosecution's evidence, including the cell phone data and the anticipated testimony from codefendant Dodd and Ms. Whall. Counsel said that he and the Petitioner discussed impeaching codefendant Dodd with evidence that codefendant Dodd was involved in a subsequent, unrelated shooting and initially minimized his involvement in the offenses in an attempt to obtain a favorable plea agreement. Counsel recalled that he filed a motion to compel the prosecution to provide the defense with any leniency agreement with codefendant Dodd. Counsel said that codefendant Dodd gave two police statements, that codefendant Dodd denied any knowledge of the offenses in the first statement, and that codefendant Dodd confessed and implicated the Petitioner during the second statement, which was recorded. Counsel said that he and the Petitioner discussed codefendant Dodd's second statement and that he provided the Petitioner with his notes about the recorded statement.

Trial counsel testified that he did not retain a cell tower location data expert who could have assisted the defense in understanding the data and in cross-examining the detective who prepared the State's report. Counsel said that a defense expert was unnecessary because an expert had been retained by the second codefendant's attorney. Counsel said that he and the attorney shared information but that counsel did not know if the expert completed the report or testified at the codefendant's trial.

Trial counsel testified that he and the Petitioner discussed the corroborating evidence requirement in connection with codefendant Dodd's testimony. Counsel recalled that they discussed the cell phone tower pings and Ms. Whall's anticipated testimony that she heard the Petitioner admit his involvement in the shooting as potential corroboration. Counsel said he and the Petitioner discussed that codefendant Dodd's phone records were damaging evidence because the records showed he and the Petitioner were "kind of peas in a pod" before, during, and after the shooting. Counsel recalled that photographs from codefendant Dodd's phone showed codefendant Dodd and the Petitioner with guns and

-4-

money. Counsel said he determined that the prosecution could have sufficient evidence to corroborate codefendant Dodd's testimony. Counsel agreed, though, that the data extracted from codefendant Dodd's phone did not contain evidence linking the Petitioner to the victim's shooting. Counsel stated that the primary evidence against the Petitioner was codefendant Dodd's testimony, Ms. Whall's testimony, and the cell phone location data. Counsel said that if the Petitioner had proceeded to a trial, the critical issue would have been whether codefendant Dodd's testimony was sufficiently corroborated.

Trial counsel testified that he filed a motion to continue approximately one month before the scheduled trial date, although he was unsure whether the trial court entered an order resolving the motion before the Petitioner entered his guilty plea. Referring to the motion for a continuance, counsel said he requested a continuance because of a scheduling conflict with another case in federal court around the time of the Petitioner's trial and because the cell phone tower location expert retained by the second codefendant's attorney was waiting for additional funding to complete the report. Counsel agreed that at the time he filed his motion for a continuance, it appeared as though the defense might not have an expert witness. Counsel said that he also sought a continuance because he learned the second codefendant wanted a severance, although counsel and the second codefendant's attorney had discussed "splitting witnesses." Counsel said that if a severance were granted, his trial preparation would have increased substantially. Counsel said he also requested a continuance because the State had not provided him with codefendant Dodd's criminal record or information related to any agreement between the prosecution and codefendant Dodd in exchange for his testimony.

Trial counsel testified that the prosecution sought to introduce prior bad act evidence related to the Petitioner's and codefendant Dodd's possessing a firearm when they encountered the police before but near the time of the victim's shooting. Counsel said that he filed a response to the motion arguing that the State was attempting to circumvent Rule 404(b) by introducing evidence of weapon possession. Counsel said that the prosecution also wanted to show that the Petitioner and the codefendants had a common scheme or plan to rob "Hispanics." Counsel said that the trial court did not enter an order resolving the motion but agreed that the outcome of the motion would have been important to the Petitioner's defense.

Trial counsel testified that he did not file a motion to exclude any of the photographs from codefendant Dodd's cell phone, although counsel had been worried the photographs would show that the Petitioner and codefendant Dodd were good friends and that they possessed a firearm and a large amount of money. Counsel said that the photographs were not prior bad act evidence and were irrelevant to the victim's shooting. Counsel said his usual practice was to file a motion to exclude evidence based on relevance near the time of the trial but agreed that a motion could have been filed at any time and that the outcome could have assisted with trial preparation.

-5-

Trial counsel testified that as part of the discovery materials, he received a storage drive containing three gigabytes of data, which contained codefendant Dodd's social media photographs and posts. Counsel recalled that the data also contained social media information from everyone codefendant Dodd followed on various social media platforms. Counsel said that he reviewed the data and created a twelve-page, single-spaced spreadsheet containing the information counsel thought was important, including approximately 500 photographs of the Petitioner and/or codefendant Dodd. Counsel said that his review of the materials would have been before April 13, 2021, when he filed the motion to continue. He said that as he prepared for the trial, he also focused significantly on plea negotiations in March 2021.

Trial counsel testified that the Petitioner was released on bond pending the trial and that on July 1, 2020, he was arrested for possession of multiple firearms and felony marijuana possession.[3] Counsel recalled that due to the Covid-19 pandemic, the State did not seek to revoke the Petitioner's bond and that the Petitioner immediately posted a bond for the new charges. Counsel said that a "federal complaint" was issued against the Petitioner and that the Petitioner was found in possession of forty grams of fentanyl when the complaint was served. Counsel recalled that the Petitioner was arrested again on July 16, 2020. Counsel said that as a result of the Petitioner's additional criminal charges, his focus was to work toward "global resolutions" of the Petitioner's cases based upon the significant amount of incarceration time the Petitioner faced. Counsel said that although he initially consulted the Petitioner's mother, she became a codefendant in one of the Petitioner's subsequent criminal cases. Counsel said that if "the offer doesn't get down to 20, this case goes to trial." Counsel said that although he focused on plea negotiations, he continued to prepare for a trial.

Trial counsel testified that at the time of the Petitioner's April 21, 2021 guilty plea, he was prepared for the three most significant witnesses. He said that the trial was scheduled about one month later and that, based upon his experience, he would have been prepared for a trial. Counsel agreed that it was unknown whether Ms. Whall would appear to testify at the Petitioner's trial and what the substance of her testimony would have been. Counsel noted that her previous statements were inconsistent as related to the second codefendant but that her statements were consistent in connection with the Petitioner. Counsel said that Ms. Whall testified at the second codefendant's trial but that he did not know if the prosecution obtained a material witness warrant for her.

Trial counsel testified that the initial plea offer was thirty years at 100% service for second degree murder and that the defense rejected it. Counsel said he sent a letter to the Petitioner regarding a potential plea agreement. Counsel said he advised the Petitioner

---

[3] The arrest warrant affidavits in connection with the subsequent offenses were received as an exhibit and were consistent with counsel's testimony.

against accepting a sentence of more than twenty-five years because such a sentence was not beneficial because the Petitioner was a juvenile at the time of the offenses. Counsel said that he suggested a fifteen-year offer to the prosecutor, who rejected it. He said that on April 9, 2021, the Petitioner's aunt sent counsel a text message stating that the Petitioner would accept a twenty-year sentence if twenty years resolved all of the Petitioner's remaining criminal cases. Counsel said that the Petitioner received a twenty-year sentence in this case, which included the remaining state criminal cases with no agreement in the federal case. Counsel recalled that although there was not an official agreement with federal prosecutors, the discussions indicated the Petitioner would receive a five-year sentence in federal court. Counsel said that the Petitioner had approximately twelve to fourteen days to consider the twenty-year plea offer. Counsel said that he and the Petitioner discussed the likelihood of conviction at a trial and that he always maintained that the State did not have a strong case.

On cross-examination, trial counsel testified that the Petitioner's potential exposure in the subsequent criminal charges was approximately sixteen years, regardless of the outcome in the present case. Counsel recalled that the Petitioner had four indictments, including a felony escape charge. Counsel said that he worked with the federal prosecutor to ensure that case was resolved, as well.

Trial counsel testified that the Petitioner's cell phone was "blank," that the phone was brand new or was "wiped," and that a jury could have inferred guilt from a blank phone. Counsel said that after the Petitioner's arrest in Georgia for a subsequent aggravated robbery, the Petitioner was placed in a juvenile halfway house and that the Petitioner "walked away from there." Counsel recalled one or two escapes involving the Petitioner but said that the Petitioner was released by mistake and surrendered to the police.

Trial counsel testified that codefendant Dodd's cell phone contained text messages exchanged with the Petitioner before and after the victim's killing, which counsel said was evidence of their friendship and which corroborated codefendant Dodd's statement. Counsel said that he spoke to the Petitioner about the motion to continue and that the Petitioner did not oppose it.

The twenty-six-year-old Petitioner testified that he lived with his mother and older brother before the victim's killing. He stated that he obtained his high school equivalency while in the custody of the Department of Youth Development. He said that he was age seventeen at the time of the offenses and that his case was transferred from juvenile court to criminal court in August 2018. He said that trial counsel met with him approximately five times while he was in jail and that they met at court appearances. The Petitioner said that when the Covid-19 pandemic began, he was able to post bond in January 2020.

The Petitioner testified that after his release, he and counsel only communicated at court appearances. The Petitioner said he returned to custody in July 2020, and that he entered his guilty plea in April 2021. He said that between July 2020 and April 2021, he and counsel met once or twice. The Petitioner said that he was arrested twice while on pretrial release for gun- and drug-related charges. The Petitioner said that he and counsel did not work on plea negotiations to resolve all of his charges after he returned to custody. The Petitioner said that he was only focused on the murder charges and that the case was going to trial. The Petitioner said that counsel provided him with the witness statements and that the Petitioner was able to review the recordings of the statements. The Petitioner said he understood that the evidence against him included codefendant Dodd's statement, Ms. Whall's statement, and cell phone tower data. The Petitioner said that counsel never discussed the strength or weakness of the State's evidence.

The Petitioner testified that he and trial counsel did not discuss the rule requiring corroboration of codefendant Dodd's testimony but that counsel said the Petitioner would lose at a trial 90% of the time if codefendant Dodd "actually point[ed] me out." The Petitioner said that he understood counsel's statement to mean that accepting the plea offer was in his best interests. The Petitioner said that counsel filed a motion to continue the trial because counsel was not prepared for a trial and had other obligations in federal court.

The Petitioner testified that trial counsel did not discuss the trial process or how counsel would cross-examine the prosecution's witnesses. The Petitioner said that they were supposed to discuss those things but that the plea offer was received. He said he rejected a thirty-year offer but that it was lowered to twenty years. He said that he and counsel only discussed the twenty-year offer once and that counsel said the offer was the best counsel could obtain in this case and was in the Petitioner's best interest to accept it. The Petitioner said he did not think counsel was prepared for a trial and that counsel's lack of preparation "kind of" affected the Petitioner's decision to accept the offer. The Petitioner said that he did not think counsel was ready for a trial, that counsel advised the Petitioner the defense would lose at a trial if codefendant Dodd testified against the Petitioner, and that counsel advised him to accept the offer. The Petitioner said that if counsel had been prepared for a trial, he would not have accepted the offer.

On cross-examination, the Petitioner testified that he told trial counsel that he did not have any knowledge of the victim's killing and that codefendant Dodd was attempting to get "out of trouble" by implicating him. He said counsel explained criminal liability for the conduct of another person. When asked why codefendant Dodd would falsely implicate his best friend, the Petitioner, in the victim's killing, the Petitioner said he did not have an answer. He denied that he erased his cell phone's data and stated that the phone was new. He did not think his phone's lack of any history of communication with codefendant Dodd was incriminating. He did not dispute that cell phone tower data showed that the same phone was near the scene of the shooting and was the same phone recovered three weeks

-8-

later, when the Petitioner was arrested for unrelated charges. The Petitioner said that he did not know how his phone "got like that" and that he did not have time to erase the phone while running from the police.

The Petitioner testified that he would not dispute jail visitation logs showing that he and trial counsel met six times between August 2, 2020, and April 16, 2021. He said that he, likewise, did not dispute trial court records showing eleven court appearances and agreed that he and counsel met at court appearances. He agreed that at the guilty plea hearing, he told the court that counsel had explained the evidence against him, that he did not have any complaints about counsel, that he pleaded guilty voluntarily, and that he pleaded guilty because he was guilty.

The Petitioner testified that he did not recall having a telephone conversation with the second codefendant after the Petitioner pleaded guilty but before the codefendant's trial began. A portion of a recorded May 2, 2021 jail telephone call between the Petitioner and the second codefendant was received as an exhibit and played to refresh the Petitioner's recollection. After hearing the recording, the Petitioner recalled the conversation and stated that he and the second codefendant discussed the trial. The Petitioner agreed that the second codefendant said the Petitioner should have waited to plead guilty and that the second codefendant said he "got to Kya."

In its written order denying post-conviction relief, the post-conviction court found that on April 21, 2021, the Petitioner pleaded guilty to second degree murder as a lesser included offense of first degree felony murder and received a twenty-year sentence at 100% service in exchange for the dismissal of the remaining indictment counts. The court found, as well, that the plea agreement resulted in the dismissal of three additional criminal cases, which involved charges of escape from a penal institutional, four counts of possession with the intent to distribute a controlled substance, three counts of evading arrest, two counts of unlawful possession of a weapon, theft, possession of drug paraphernalia, driving without having a license, and misdemeanor vandalism.

The post-conviction court framed the Petitioner's ineffective assistance of counsel allegation as trial counsel's failure to prepare adequately by carefully evaluating the quality of the State's witnesses and by advising the Petitioner to accept a plea offer without adequately investigating the case and the witnesses. The court found, however, that the Petitioner failed to present evidence regarding the additional steps counsel could have taken to investigate the case and to prepare for a trial. The court credited counsel's testimony that the evidence was not strong but found that evidence against the Petitioner "was not non-existent." The court found that codefendant Dodd and Ms. Whall were prepared to testify about the Petitioner's involvement in the victim's killing, that a jury could have credited or discredited the testimony, that cell phone data placed the Petitioner

at the crime scene, and that jail telephone calls and text messages exchanged between the Petitioner and codefendant Dodd would have been admissible evidence.

The post-conviction court discredited the Petitioner's testimony that he only accepted the plea offer because he believed trial counsel was unprepared for a trial. The court credited counsel's testimony that he and the Petitioner discussed trial strategy, the prosecution's witnesses and evidence against the Petitioner, and the charges in this case and the subsequent unrelated cases. The court found that counsel met with the Petitioner approximately seventeen times during the course of two-and-one-half years. The court found that although counsel filed a motion to continue the trial, the motion remained under advisement and that counsel's trial preparation was ongoing based upon the court's granting the defense's motion to compel one week before the guilty plea hearing. The court found it "more persuasive" that the Petitioner entered a guilty plea because the agreement resulted in the dismissal of multiple charges in unrelated cases.

The post-conviction court found that the Petitioner did not present evidence that his guilty plea was unknowingly and involuntarily entered. The court found that at the guilty plea hearing, the trial court advised the Petitioner of his rights, that the Petitioner stated he understood his rights, and that the Petitioner did not have any questions. The court found, as well, that the Petitioner stated that he understood the charges against him and the sentencing ranges. The court found that the Petitioner, likewise, told the trial court that trial counsel explained the evidence against him, explained the applicable laws in the case, discussed possible outcomes of a trial, and answered all of his questions. The court found that the Petitioner told the trial court that he did not have any complaints about counsel. As a result, the court determined that the Petitioner made an informed decision to plead guilty based upon counsel's adequate preparation.

The post-conviction court acknowledged that the second codefendant was acquitted at a trial but determined that it was mere speculation that the Petitioner might have been acquitted, as well. The court found that the Petitioner did not present any evidence showing that a trial might have resulted in an acquittal.

The post-conviction court determined that trial counsel's motion to continue did not constitute an admission by counsel that he was unprepared for a trial. The court found that the motion included multiple reasons in support of a "short continuance," which included a possible severance of the Petitioner's and the second codefendant's cases, a scheduling conflict with a federal court case, the need for additional expert witness funds, outstanding discovery, and ongoing Covid-19 concerns. The court found that counsel also sought to compel production of *Brady* materials regarding the State's witnesses and opposed the State's 404(b) motion. The court found that the motion to compel was granted, although the 404(b) and the continuance motions were never resolved.

-10-

The post-conviction court credited trial counsel's testimony that about thirty days before the scheduled joint trial, he learned that the second codefendant wanted to sever his case and that counsel and the second codefendant's attorney had been mounting a joint defense by splitting witnesses and sharing a cell phone expert. The court determined that a severance close to the scheduled trial date would have altered counsel's trial preparation and strategy and that any necessary alterations did not result in a failure to be prepared for a trial. The court determined that the Petitioner failed to present any credible evidence showing that counsel was unprepared for a trial. The court determined that counsel did not provide deficient performance resulting in prejudice. This appeal followed.[4]

The Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel allegation that counsel failed to prepare adequately before advising him to accept the twenty-year plea offer. The Petitioner, likewise, argues that the court failed to address his allegation that counsel engaged in cumulative deficiencies resulting in prejudice. The State responds that the court did not err by denying relief. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective

_____

[4] This court granted the Petitioner's request to waive the timely filing of the notice of appeal. *See Takyris Simms v. State*, No. M2024-01667-CCA-MR3-PC (Tenn. Crim. App. Nov. 5, 2024) (order).

assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner argues trial counsel failed to engage in adequate preparation by carefully evaluating the credibility of the State's witnesses and advised the Petitioner to accept a plea offer without conducting an adequate investigation of the case and the witnesses. In support of his arguments, the Petitioner asserts that counsel conceded in his motion for a trial continuance that he was unprepared for a trial.

The record reflects, based upon trial counsel's credited testimony, that he and the Petitioner discussed the jury trial process, the then-required corroboration for accomplice testimony,[5] criminal responsibility for the conduct of another, and the evidence against the Petitioner, which primarily included cell phone data placing the Petitioner's phone near the crime scene at the time of the victim's killing, the anticipated testimony from codefendant Dodd that the Petitioner robbed and shot the victim, Ms. Whall's anticipated testimony that the Petitioner admitted to being involved in the offenses, and information obtained from codefendant Dodd's phone. Counsel and the Petitioner discussed impeaching codefendant Dodd's testimony with evidence of his inconsistent statements regarding the victim's killing and his involvement in a subsequent unrelated shooting. Counsel and the Petitioner

---

[5] Traditionally, Tennessee has followed the common-law rule that "a conviction may not be based solely upon the uncorroborated testimony of an accomplice." *See, e.g.*, *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001), *abrogated by State v. Thomas*, 687 S.W.3d 223 (Tenn. 2024); *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994), *overruled by Thomas*, 687 S.W.3d at 229; *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964), *overruled by Thomas*, 687 S.W.3d at 229. Recently, our supreme court prospectively abolished the common-law rule and said that for all trials commencing after March 7, 2024, corroboration of accomplice testimony is not required. *Thomas*, 687 S.W.3d at 229.

-12-

discussed codefendant Dodd's second statement, in which he implicated the Petitioner as the person who robbed and shot the victim, and counsel provided his notes about the statement to the Petitioner. The Petitioner testified that counsel provided him with the witness statements and that he was able to review the recordings. Counsel requested information regarding codefendant Dodd's criminal history and obtained an order compelling the State to provide the information. Counsel, likewise, requested information regarding any agreement for leniency in connection with codefendant Dodd and filed responses opposing the State's pretrial motions.

Likewise, the Petitioner and the second codefendant were, at least initially, proceeding to a joint trial. Based upon this, trial counsel and the codefendant's attorney devised a trial preparation strategy to share information, including a cell phone expert, and to divide the responsibility of questioning the trial witnesses. However, about one month before the trial, counsel requested a continuance for multiple reasons, which included a possible severance of the Petitioner and the second codefendant's joint trial at the request of the second codefendant, a scheduling conflict with a federal case, the need for additional funds for the cell phone expert witness to complete a report, and outstanding discovery. Counsel reasonably concluded that his trial preparation would have increased substantially if the joint trial was severed but that he would have been prepared if the Petitioner chose to proceed to a trial. Counsel consulted the Petitioner about requesting a continuance, and the Petitioner did not oppose it.

Trial counsel and the Petitioner met at the jail six times and during eleven court appearances. Counsel reviewed the discovery materials in preparation for a trial, and the materials included three gigabytes of data related to codefendant Dodd's and other individuals' social media information, photographs, and posts. Counsel created a large spreadsheet of the relevant data, which included 500 photographs. As counsel continued to prepare for the trial, counsel negotiated a plea agreement resolving the present case and three subsequent state criminal cases. Counsel advised the Petitioner not to accept a plea offer of more than twenty-five years, and the Petitioner's aunt sent a text message to counsel stating that the Petitioner would accept twenty years if the sentence included a resolution of the Petitioner's subsequent criminal cases, which counsel testified could have garnered an additional sixteen years' confinement. The Petitioner's plea agreement resulted in the dismissal of the Petitioner's three remaining state cases, and counsel's discussions with federal prosecutors indicated the Petitioner would receive a five-year sentence, although no official agreement existed.[6] The Petitioner had twelve to fourteen days to consider the twenty-year offer, and counsel and the Petitioner discussed the likelihood of conviction at a trial and counsel's conclusion that the State did not have a strong case.

---

[6] The record does not reflect the outcome of the federal prosecution, but the parties did not dispute trial counsel's testimony that the Petitioner received a five-year sentence.

The Petitioner did not present any evidence showing any additional trial preparation counsel should have conducted. This court will not speculate about the nature of any evidence which was not presented at the post-conviction hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We note that although the Petitioner alleged that counsel failed to evaluate the credibility of the prosecution's witnesses, the Petitioner did not present those witnesses at the evidentiary hearing or question counsel about whether he considered the witnesses to be credible.

Likewise, the guilty plea transcript reflects that the Petitioner entered a knowing, voluntary, and intelligent guilty plea. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see also Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The Petitioner told the trial court under oath that he and counsel reviewed the plea agreement, that counsel answered his questions about the agreement, and that he understood the terms of the agreement. The Petitioner told the trial court that he and counsel discussed the charged offenses, possible sentences upon conviction, the facts and circumstances of the case, the evidence against him, the applicable law, and the possible outcomes at a trial. The Petitioner said that counsel answered all of his questions during their discussions and that he did not have any complaints about counsel. The Petitioner understood that the agreement included a dismissal for the subsequent state drug- and weapon-related charges, along with felony escape. The court advised the Petitioner of the constitutional rights he waived by pleading guilty, and the Petitioner understood and did not have any questions for the court. The Petitioner stated that he was pleading guilty because he was guilty of the conviction offense. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that trial counsel provided deficient performance which resulted in prejudice. The Petitioner is not entitled to relief on this basis.

The Petitioner, likewise, argues that he is entitled to relief based upon the cumulative effect of trial counsel's multiple instances of deficient performance, although the post-conviction court did not address the issue.

In a post-conviction case, "when an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice" of an ineffective assistance of counsel allegation. *Timothy Terell McKinney v. State*, No. W2006-02132-CCA-R3-PD, 2010 WL 796939, at *37 (Tenn. Crim. App. Mar. 9, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010); *see State*

*v. Taylor*, 968 S.W.2d 900 (Tenn. Crim. App. 1997). More than one instance of deficient performance, when considered collectively, can result in a sufficient showing of prejudice pursuant to *Strickland*. *Timothy Terell McKinney*, 2010 WL 796939, at *37; *see Taylor*, 968 S.W.2d at 909. The question is whether counsel's deficiencies "cumulatively prejudiced . . . the right to a fair proceeding and undermined confidence in the outcome of the trial." *Timothy Terell McKinney*, 2010 WL 796939, at *37. In the present case, Petitioner has failed to demonstrate that multiple incidents of deficient performance occurred. Without findings of multiple deficiencies in counsel's performance, no basis existed upon which the post-conviction court could have found that the Petitioner was prejudiced by multiple deficiencies. The court did not err by failing to grant relief on the basis of cumulative error. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.


**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE